UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERMAINE WILL DAVIS,

        Plaintiff,

vs.

CITY OF GRAND RAPIDS, a Municipal corporation,
GRAND RAPIDS POLICE CHIEF ERIC PAYNE,
GRAND RAPIDS POLICE OFFICERS JOHN DOE,
OFC. EVAN SAXE (312), OFC. SHAWN HARMON (045)

        Defendants.

Case No. 1:22-cv-332
Hon. Janet T. Neff

| THE MICHIGAN LAW FIRM, PC | Elizabeth J. Fossel (P41430) |
|---|---|
| Racine M. Miller (P72612) | Sarah J. Hartman (P71458) |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 135 N. Old Woodward  Ste 270 | City of Grand Rapids Law Dept. |
| Birmingham, MI 48009 | 300 Monroe Ave. NW, Ste. 620 |
| Phone: 844.464.3476 | Grand Rapids, MI 49503 |
| racine@themichiganlawfirm.com | Phone: 616.456.1318 |
| | efossel@grand-rapids.mi.us |
| | shartman@grand-rapids.mi.us |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

NOW COMES Plaintiff Jermaine Will Davis, by and through his attorneys, The Michigan Law Firm, PC, and for his Second Amended Complaint, states as follows:

1.    This is an action for money damages brought pursuant to 42 U.S.C. §§1981, 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and under the statutes and common law of the State of Michigan against these named Defendants in their individual

capacities and/or official capacities and against the City of Grand Rapids, Michigan. It is alleged that Defendants, while acting under color of law and in the scope and course of their employment as police officers, wrongfully arrested, detained, searched, and assaulted Plaintiff, employed excessive force against the Plaintiff, and acted with grossly negligent conduct toward him, violating his rights under federal law, Michigan statutory law and common law, and his Constitutional rights.

2. Plaintiff was wrongfully stopped, seized, investigated, searched, and arrested without reasonable suspicion or probable cause but based on false information provided knowingly, recklessly, and/or grossly negligently by individuals Harmon and Saxe.

3. Plaintiff was also treated unequally because of his race, in violation of the Equal Protection Clause, the Fourteenth Amendment and the Elliott-Larsen Civil Rights Act.

## PARTIES, JURISDICTION and VENUE

4. Plaintiff incorporates each preceding paragraph as if fully set forth herein.

5. Plaintiff Jermaine Will Davis is, and was at all times relevant, a citizen of the State of Michigan residing within the Western District of Michigan.

6. Defendant City of Grand Rapids is a Municipal Corporation incorporated under the laws of the State of Michigan.

2

7.     Defendant Chief Eric Payne was at all times relevant the City of Grand Rapids official with final policymaking authority relevant hereto, at all times relevant was under the employ of the City of Grand Rapids, and was operating under color of state law.

8.     Defendant Shawn Harmon #065 was at all times relevant a police officer under the employ of the City of Grand Rapids and was operating under color of state law.

9.     Defendant Officer Saxe was at all times relevant a police officer under the employ of the City of Grand Rapids and was operating under color of state law.

10.    Defendant Officer John Doe was at all times relevant a police officer under the employ of the City of Grand Rapids and was operating under color of state law.

11.    At all times relevant, the acts and omissions of each individual Defendant were the direct and proximate cause of deliberate indifference to the rights, privileges, and immunities of those citizens with whom they interact, including the Plaintiff, Jermaine Will Davis.

12.    As to the negligent conduct of the Defendants, it is alleged that the Defendants caused injuries to Plaintiff while acting in the course of employment or service or on behalf of their governmental employer and;

      a.   Defendants were acting or reasonably believed that they were

        acting within the scope of their authority,

        b. the governmental agency was engaged in the exercise or discharge of a governmental function, and

        c. the Defendants' conduct amounted to gross negligence that was the proximate cause of the injury or damage.

13. As to the intentional torts of the Defendants, it is alleged that:

        a. The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his/her authority,

        b. the acts were undertaken with lack of good faith, or were undertaken with malice, and

        c. the acts were ministerial and not discretionary.

14. All events, transactions, or occurrences pertinent hereto, occurred within the County of Kent, City of Grand Rapids, State of Michigan.

15. Upon information and belief, the individual Defendants reside in the County of Kent, State of Michigan.

16. This Court has jurisdiction pursuant to 28 USC §§1331 and 1367.

17. Venue is proper in this court pursuant to 28 USC §1391(b), as the Defendants are each employed within this District, transact business withing this District, and the conduct complained of occurred within this District.

## INTRODUCTION

18. The Michigan Department of Civil Rights has investigated and found

sufficient grounds for the issuance of a charge of racial discrimination and unequal service in the following matters:

    a. Ligon on behalf of minor MC-2, Case No.: 490991 (8/26/18)

    b. Ligon on behalf of minor MC-1, Case No.: 490990 (8/26/18)

    c. Hodges, Case No. 48549 (12/6/17)

    d. Mason, Case No.: 610406 (1/25/20). Exhibit 5.

19. Upon information and belief, the City was not evaluated by an independent expert prior to Plaintiff's encounter with Defendants, nor were meaningful steps taken to correct any racial profiling practices by the City's personnel. There is no plan to obtain expert assistance or to seek review of the City's policies and practices to determine whether officers are engaged in racial profiling; and if so, the remedial measures that will be required to eliminate that practice. This is of special importance because of policies and practices of the City that are likely to motivate officers to continue to engage in racial profiling, including its performance evaluation procedures, which incentivizes unlawful or arbitrary vehicle stops of people who may be (or be perceived as) less likely to complain, have fewer resources to contest, and/or who may be less likely to be believed or taken seriously in order for officers to remedy their stop records or meet performance expectations.

20. Here, Plaintiff did nothing other than drive while black, and stop at a party store in a predominantly black neighborhood. For that, he was

stopped, interrogated, held in police custody for nearly an hour at a scene with multiple police officers, several cruisers, and a K-9 unit present, and detained as though he were a criminal and subjected to the gaze of passing drivers.

21. As a result of Defendants' actions, Plaintiff suffered fear, emotional distress, humiliation, anguish, and other injury and damage.

22. As a result of Defendant City's failure to end its practice of racial profiling, Plaintiff continues to suffer fear, emotional distress, humiliation, and anguish from the knowledge that, despite complying with the law, he is more likely, if not certain, to be stopped, searched, and detained again by GRPD because of his race.

## STATEMENT OF RELEVANT FACTS

23. Plaintiff incorporates each preceding paragraph as if fully set forth herein.

24. On or about March 18, 2021 at approximately 8:45 p.m., Plaintiff stopped at Joe's Party Store (aka Hall Street Party Store) located at 110 Hall SW, Grand Rapids, MI 49507 to purchase a money order.

25. Plaintiff remained inside Joe's Party Store for approximately three (3) minutes.

26. Once Plaintiff completed his business, he exited Joe's Party Store and entered his vehicle, which was parked in the parking lot.

27. As Plaintiff was beginning to leave Joe's Party Store, his friend, Brenda Grubbs, pulled into the same parking lot and noticed Plaintiff was there.

28. Plaintiff and Ms. Grubbs, while remaining inside their respective vehicles, engaged in conversation.

29. Ms. Grubbs expressed her admiration of Plaintiff's vehicle, and then exited the vehicle she had been sitting in and made entry into Plaintiff's vehicle to have a better look at the interior of Plaintiff's vehicle.

30. After a few minutes, Ms. Grubbs exited Plaintiff's vehicle, and Plaintiff made his way down Division Ave. towards his residence.

31. While travelling south on Division Ave. and as Plaintiff approached Cherry Street, he noticed police lights in his rear-view mirror.

FEBRUARY 1, 2020 – PRIOR TO THE ENCOUNTER

32. On February 1, 2020, officers Zachary Gregory (064) and Evan Saxe (312) were dispatched to speak with the victim of a weapons brandished incident, where the victim alleged that a man in a 2012 Black Mercedes Benz and himself had a verbal altercation where the subject allegedly lifted up his jacket to display a firearm.  In the report, it was indicated that the last time that vehicle was stopped by Grand Rapids Police, it had been driven by a Jermaine Davis, whose address is the same as the registered owner of the vehicle.

33. Despite having his name and home address, neither Office Saxe or any

7

other officer interviewed Plaintiff, and no prosecutor ever charged Plaintiff, and the complainant did not want to pursue the matter.

*34.*   Unbeknownst to Plaintiff, Officer Shawn Harmon (045) had been assigned to a follow-up investigation, and on February 18, 2020, created a "case" within the Axon BWC Program, under report number 20-007779, and composed an Officer Safety Flyer regarding Jermaine Davis and his 2012 Mercedes Benz, which was disseminated to all sworn personnel/ECO's for "officer safety purposes"1  despite the fact that the incident upon which said bulletin was based was CLOSED. *Id.*

35.   There was no basis in fact or in law that would justify dissemination of the false information by Harmon that Plaintiff was "known to carry firearms" or "investigated for carrying a concealed weapon" being circulated throughout the department, when there is no evidence that any such incidences ever took place.  The foreseeable effect of this dissemination was a "high-risk" officer engagement with Plaintiff, including the unlawful stop, detention, and search of Plaintiff without probable cause.

### THE INCIDENT OF MARCH 18, 2021

36.   On March 18, 2021, unbeknownst to Plaintiff, a "field initiated" call alerted the Grand Rapids MCT (Major Case Team)[2] assisted by traffic patrol

---

[2] Exhibit 2

police officers Grant Abraham (560), unknown officer John Doe, Andrew Middleton (062) and Kayln Stephens (207) that a "driver known to carry a firearm" named Jermaine Davis was driving a 2012 Mercedes Benz and should be followed and stopped based on probable cause based on "observations" at the Hall Street Party Store.

37. On March 18, 2021, Defendant Officer Saxe had asked for the patrol unit to initiate a traffic stop on the 2012 Mercedes Benz driven by Jermaine Will Davis, indicating that there was probable cause to stop the vehicle based on observations at the Hall Street Party Store, and falsely stating that "he had taken complaints regarding the driver of the vehicle being CCW" (carrying concealed weapon).

38. Only Officer Saxe had ever claimed that Plaintiff was "known to carry a firearm," even indicating that "he had taken complaints regarding the driver of the vehicle being CCW" (carrying a concealed weapon), which was patently untrue.

39. Based on the information received, Officer Douglas Stevens (#179) initiated a high-risk traffic stop after being guided by detectives about the direction of travel of the plaintiff, pulling him over at South Division Ave, north of Cherry Street.  Exhibit 3.

40. Plaintiff immediately pulled over to the right side of the road.

41. Plaintiff was approached by police officers with their guns drawn and

9

was commanded to put his hands in the air, unlock his car door with his left hand, and exit his vehicle with his back to the police.

42. Officers then commanded Plaintiff to remove his seatbelt, turn around with his hands in the air, lift up his shirt, turn around again, and while keeping his hands in the air and his back to officers, to get down on his knees and then to lay face down on the ground.

43. While officers kept their weapons trained on Plaintiff, Officer J. Smith handcuffed the Plaintiff tightly, and searched the Plaintiff, locating no weapons or drugs.

44. Plaintiff was cooperative during the traffic stop and complied with commands given to him.

45. Responding officers then began to search Plaintiff's vehicle without consent or other lawful reason.

46. Still handcuffed, Plaintiff was placed into the back seat of a police car.

47. Plaintiff watched helplessly as several police officers and a K-9 unit began to search his vehicle inside and out.

48. Plaintiff asked why he was being detained and why his car was being searched, but officers did not explain their actions to him, stating only that a detective would come down to explain everything.

49. Officer Stevens used K9 officer Jack to search the vehicle, based on alleged probable cause supplied by Unknown Doe reflected in incident

report authored by Stevens,[3] yet redacted as to the probable cause element.

50.   Plaintiff began to experience a panic attack.

51.   After approximately 50 minutes, officers approached the vehicle in which Plaintiff was detained and removed the Plaintiff and the handcuffs.

52.   Plaintiff was taken aside by the main officer conducting the search of his vehicle and was advised in a low voice that the officers had received an anonymous telephone call that Plaintiff may have a gun in the vehicle.

53.   Plaintiff discovered later that no anonymous call had been placed concerning him, but rather, Officer Saxe had made a false report over the radio.

54.   This same officer continued talking to Plaintiff, indicating that police found a "regular sized vial" under the driver's seat, and placed an unlabeled prescription pill bottle into Plaintiff's hands.

55.   This same officer indicated that a rock was discovered inside the vial, clarifying that it was not a crack rock, but a regular, outdoor rock.

56.   This same officer then asked Plaintiff if had had been involved with firearms or had any prior run-ins with the law.

57.   Plaintiff truthfully responded yes.

58.   Officer Stephens then told Plaintiff he was free to go.

59.   Plaintiff sat, shaking, in his vehicle and afraid for a period of time.

---

[3] Exhibit 3, March 18, 2021 Stevens report regarding incident number 21-016311

60. On August 18, 2021 Sergeant Greg Alcala contacted officer Doe concerning the stop Saxe had requested back in March. Despite heavy redactions, it is clear that Ofc. Doe, for the first time, now said that he/she "saw a hand-to-hand transaction with Jermaine" and had requested nearby units to conduct a traffic stop after his/her observations based on probable cause. Exhibit 4.

## COUNT I – FALSE ARREST/FALSE IMPRISONMENT

61. Plaintiff hereby incorporates by reference each preceding paragraph as though fully set forth herein.

62. Defendants caused the intentional confinement and detention of the Plaintiff against his will and without lawful justification.

63. In so doing, Defendants acted with malice, bad faith, or in a wanton or reckless manner with respect to the rights of Plaintiff.

64. As the direct and proximate cause of the acts and omissions of the defendants, Plaintiff has suffered damages.

65. The actions of Officer Saxe in announcing over the radio an unsubstantiated claim that the driver or owner of the 2012 Mercedes is known to carry firearms and that he had taken CCW complaints against Plaintiff without evidence of the veracity of such claims amounts to the conscious or reckless disregard of the consequences of his acts or omissions, amounting to gross negligence in avoidance of governmental immunity.

66. The actions of Officer Harmon in disseminating an officer safety flyer without any evidence to support the same likewise amounts to the conscious or reckless disregard of the consequences of his acts or omissions, amounting to gross negligence in avoidance of governmental immunity.

67. The actions of unknown officer Doe in providing a vague statement of witnessing a "hand-to-hand transaction" likewise amounts to the conscious or reckless disregard of the consequences of his acts or omissions, amounting to gross negligence in avoidance of governmental immunity.

68. Defendants Saxe, Harmon and Doe fabricated evidence to create probable cause against Plaintiff in violation of his Fourth Amendment rights.

69. Defendants Saxe, Harmon and Doe Treated Plaintiff unequally because of his race in violation of the Equal Protection Clause, the Fourteenth Amendment, and the Elliot-Larsen Civil Rights Act.

70. Except for the improper conduct, false information, and the fabrication of evidence by individual defendant, which was done in accordance with the customs, policies, patterns and practices of the defendant City, no probable cause existed to interfere with Plaintiff for anything.

71. As the direct and proximate cause of the acts and omissions of the Defendants, Plaintiff has suffered injury and damages.

## COUNT II - 42 U.S.C. 1983 & 1985 AGAINST HARMON AND SAXE

72. Plaintiff hereby incorporates by reference each preceding paragraph as though fully set forth herein.

73. The Individual Defendant's actions were done in his individual capacities, and under color of state law.

74. The Individual Defendant's actions violated clearly established rights of the Plaintiff including, but not limited to:

   a. The right to be free from wrongful investigation, arrest and wrongful imprisonment, and use of excessive force (4th and 14th Amendment); and

   b. The right to be free from unequal treatment due to race in violation of the Equal Protection Clause, the 14th Amendment and the Elliott-Larsen Civil Rights Act.

75. Defendants, and each of them, while operating under color of state law, have deprived Plaintiff of the rights, privileges and immunities secured by the United States Constitution, including, without limitation, the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

76. Plaintiff Jermaine Davis was unlawfully and unreasonably surveilled, stopped, handcuffed, and detained by the named Grand Rapids police officers without articulable suspicion or probable cause, amounting to a violation of the Fourth Amendment protections against unwarranted search and seizure.

77. The officers who aimed their firearms at Plaintiff did so without

14

justification, amounting to an excessive use of force in derogation of the Plaintiff's substantive due process right to bodily integrity and against government-imposed bodily intrusions as found in the Fifth and Fourteenth Amendment's Due Process Clauses.

78. Plaintiff was further subjected to an unlawful search of his person and his vehicle without warrant, probable cause, articulable/reasonable suspicion, or exigent circumstances.

79. As the direct and proximate cause of the acts and omissions of the defendants, Plaintiff has suffered injury and damages.

80. As the direct and proximate cause of the acts and omissions of the defendants, Plaintiff has suffered injury and damages.

## COUNT III
## MUNICIPAL LIABILITY AGAINST DEFENDANT
## CITY OF GRAND RAPIDS, CHIEF PAYNE UNDER 42 USC 1983

81. Plaintiff hereby incorporates by reference each preceding paragraph as though fully set forth herein.

82. Defendant's routine violation of constitutional and statutory rights is ongoing and pervasive. Further, it is unlikely that the City will remedy these patterns and practices of unlawful conduct absent judicial mandate and oversight.

83. The City of Grand Rapids, through the Grand rapids Police Department ("GRPD"), engages in an ongoing pattern or practice of

conduct, including discrimination, that deprives persons of rights, privileges and immunities secured and protected by the United States Constitution and federal law. Grand Rapids law enforcement officials conduct stops, searches, and arrests without legal justification, in violation of the Fourth and Fifth Amendments, due process and equal protection guarantees of the Fourteenth Amendment; use excessive force, in violation of the Fourth Amendment and discriminate against African Americans in violation of the Fourteenth Amendment and federal statutory law.

84. At all times herein, Defendant Grand Rapids, with deliberate indifference to the constitutional rights of the Plaintiff and other similarly situated individuals, established, promulgated, implemented, and maintained the following customs, policies, or practices that were a proximate cause and a moving force in violations of the Plaintiff's rights under the United States Constitution:

   a. Failing to adequately train, supervise, and/or discipline law enforcement officers and supervisors with regard to the appropriate and necessary bases for investigations, use of force, arrests and racial profiling of African Americans;

   b. Hiring and/or retaining as law enforcement officers, supervisors, and certain persons whom the Defendant City knew or had actual notice of using excessive force, arresting without probable cause, investigating without reasonable suspicion and racial profiling of African Americans;

   c. Failing to intervene when it knew of retaliation, improper excessive force, wrongful arrest, wrongful investigation and

      racial profiling of African Americans;

    d. Condoning and actively encouraging the use of processes that failed to properly monitor, evaluate and determine the continuing arrest without probable cause, wrongful investigation, improper use of force, and racial profiling of African Americans;

    e. Routinely concealing, covering up, and hiding evidence of wrongdoing by law enforcement officers employed by the Defendant City.

85. Each of the customs, policies, or practices was known to Defendant City as highly likely and probable to cause violations of the United States constitutional rights of Plaintiff and other individuals subject to continued detention without probable cause, and each was a moving force in the violations of the Plaintiff's United States constitutional rights, as set forth herein.

86. Despite knowledge of the ongoing misconduct in the police department, the City, through its actions and inactions, ratified, condoned, and/or permitted the conduct of individual defendants such that their conduct amounted to the policy of the City.

87. As a direct and proximate result of Defendant City's actions, Plaintiff suffered injury and damages.

<u>COUNT IV
VIOLATION OF THE ELLIOT LARSEN CIVIL RIGHTS ACT
AGAINST ALL DEFENDANTS</u>

88. Plaintiff hereby incorporates by reference each preceding paragraph

as though fully set forth herein.

89. Under the Michigan Elliot-Larsen Civil Rights Act, Defendants are precluded from denying Plaintiff the full and equal enjoyment of the "goods, services, facilities, privileges, advantages, or accommodations of a public service" on account of Plaintiff's race, color, or national origin.

90. As a result of the above-described actions and conduct, Plaintiff was denied full and equal public services because of his race, color, and national origin in direct violation of the Michigan Civil Rights Act.

91. As a result of the above actions and conduct, Plaintiff was subjected to excessive force, harassment, profiling, false arrest, and false imprisonment based upon his race, color and national origin as defined under the Michigan Civil Rights Act, to the point where said actions and conduct substantially interfered with Plaintiff's public accommodations and public services, thereby creating an intimidating, hostile, and/or offensive public accommodations and public services environment, in direct violation of the Michigan Civil Rights Act.

92. That as a direct and proximate result of the Defendants' actions, Plaintiff suffered injury and damages.

## DAMAGES

93. Plaintiff hereby incorporates by reference each preceding paragraph as though fully set forth herein.

94. As a direct and proximate result of the Defendants' actions, Plaintiff suffered injury and damages, including, but not limited to:

    a. Pain and suffering, physical injury,

    b. Loss of society and companionship

    c. Fear, humiliation, outrage, anxiety and shame; and

    d. Constitutional harms.

WHEREFORE, the Plaintiff claims judgment against Individual Officers in the amount in excess of Seventy-Five Thousand Dollars ($75,000) which is fair and consistent with the law and evidence as shall be determined, together with interest, costs and attorney's fees pursuant to 42 USC §1988 and MCL 691.1407 Sec. 7 and all other damages, including exemplary and/or punitive damages.

Respectfully submitted,

THE MICHIGAN LAW FIRM, PC

By: /s/ RACINE MILLER (P72612)
*Attorneys for Plaintiff*
135 N. Old Woodward Ave. Ste 270
Birmingham, MI 48009
P: 844.464.3476 F: 248.237.3690
racine@themichiganlawfirm.com

Dated: May 11, 2023

## JURY DEMAND

NOW COMES Plaintiff by and through counsel, and hereby demand a trial by jury of each and every matter at issue in the above-entitled cause.

Respectfully submitted,

THE MICHIGAN LAW FIRM, PC

By: /s/ RACINE MILLER (P72612)
*Attorneys for Plaintiff*

Dated:  May 11, 2023

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that on May 11, 2023, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record in this matter.

/s Racine M. Miller
Racine M. Miller