# Michigan Office of Administrative Hearings and Rules
## REQUEST FOR HEARING

RECEIVED

JUL 2 0 2022

Michigan Office Of Administrative
Hearings and Rules

| 1. IN THE MATTER OF: | |
|---|---|
| Michigan Department of Civil Rights ex rel Whitney Hodges, next of kin on behalf of Honestie Hidges<br><br>v<br><br>Grand Rapids Police Department | |

| 2. CASE TYPE<br>Rule 12 Hearing - Unequal Public Service - Race | 3. AGENCY<br>MDCR |
|---|---|
| 4. DIVISION<br>Legal | 5. BOARD<br>Michigan Civil Rights Commission |

| 6. GEOGRAPHIC LOCATION OR FORMAT FOR HEARING<br>Lansing or GR | |
|---|---|

| 7. INITIATING AGENCY'S FILE NUMBER<br>485649 | 8. STATUTORY START DATE<br>Within a reasonable time and according to the rules. |
|---|---|

| 9. STATUTE, RULE, OR REGULATION<br>Elliott-Larsen Civil Rights Act 37.2301 and 2302. |
|---|

| 10. ISSUE<br>Did Honestie Hodges receive Unequal Public Service by GRPD because of her race when she was handcuffed and placed in a police car constituting an arrest and/or detention? |
|---|

| 11. PREPARED BY<br>Michael Pelot | PHONE NUMBER<br>517-284-7245 | FAX NUMBER<br>517-241-3963 | DATE PREPARED<br>7/20/2022 |
|---|---|---|---|

| 12. COMMENTS |
|---|
|  |

**For MOAHR Use Only**

| DATE RECEIVED | DATE COMPLETED | COMPLETED BY |
|---|---|---|
| DOCKET NUMBER | ALJ ASSIGNED | |
| COMMENTS | | |

MOAHR RFH-01/2021

MCL 24.201 *et seq.*

https://www.michigan.gov/moahr
611 W. Ottawa - 2nd Floor
Lansing, MI 48909

1 | P a g e
Phone: 517-335-2484

# REQUEST FOR HEARING

| 13. CHECK ONE (X) ☐ Petitioner | ☐ Respondent | ☐ Intervenor | ☒ Department |
|---|---|---|---|
| ☐ Petitioner's Attorney | ☐ Respondent's Attorney | ☐ Intervenor's Attorney | ☐ Other |
| ☐ Petitioner's Representative | ☐ Respondent's Representative | ☐ Intervenor's Representative | |

**14. NAME**
Michael J. Pelot

**15. FIRM**
MDCR

**16. ON BEHALF OF**
MDCR

**17. STREET ADDRESS/P.O. BOX**
110 W Michigan Ave Ste 800

| 18. CITY | 19. STATE | 20. ZIP CODE | 21. PHONE | 22. FAX |
|---|---|---|---|---|
| Lansing | MI | 48933 | 517-284-7245 | 517-241-3963 |

| 23. EMAIL ADDRESS | May documents be served to this party/representative via email only? | Yes ☒ | No ☐ |
|---|---|---|---|
| pelotm@michigan.gov | | | |

| 24. CHECK ONE (X) ☐ Petitioner | ☐ Respondent | ☐ Intervenor | ☐ Department |
|---|---|---|---|
| ☒ Petitioner's Attorney | ☐ Respondent's Attorney | ☐ Intervenor's Attorney | ☐ Other |
| ☐ Petitioner's Representative | ☐ Respondent's Representative | ☐ Intervenor's Representative | |

**25. NAME**
Stephen R. Drew

**26. FIRM**
Drew Cooper and Anding

**27. ON BEHALF OF**
Whitney Hodges, next of kin to Honestie Hodges

**28. STREET ADDRESS/P.O. BOX**
80 Ottawa Ave Ste 200

| 29. CITY | 30. STATE | 31. ZIP CODE | 32. PHONE | 33. FAX |
|---|---|---|---|---|
| Grand Rapids | MI | 49503 | 616-454-8300 | |

| 34. EMAIL ADDRESS | May documents be served to this party/representative via email only? | Yes ☒ | No ☐ |
|---|---|---|---|
| sdrew@dca-lawyers.com | | | |

| 35. CHECK ONE (X) ☐ Petitioner | ☐ Respondent | ☐ Intervenor | ☐ Department |
|---|---|---|---|
| ☐ Petitioner's Attorney | ☒ Respondent's Attorney | ☐ Intervenor's Attorney | ☐ Other |
| ☐ Petitioner's Representative | ☐ Respondent's Representative | ☐ Intervenor's Representative | |

**36. NAME**
Elizabeth J. Fossel

**37. FIRM**
City of Grand Rpids

**38. ON BEHALF OF**
Grand Rapids Police Department

**39. STREET ADDRESS/P.O. BOX**
300 Monroe Ave NW Ste 620

| 40. CITY | 41. STATE | 42. ZIP CODE | 43. PHONE | 44. FAX |
|---|---|---|---|---|
| Grand Rapids | MI | 49503 | 616-456-3099 | |

| 45. EMAIL ADDRESS | May documents be served to this party/representative via email only? | Yes ☒ | No ☐ |
|---|---|---|---|
| efossel@grand-rapids.mi.us | | | |

MOAHR RFH-01/2021

# REQUEST FOR HEARING

## Instructions to Complete Form

### Page 1 of Request for Hearing

1. List Petitioner v. Respondent with the proper names and titles.
2. The type of action involved in this hearing, e.g. Disciplinary, Denial of License, Summary Suspension.
3. State agency name.
4. Division within the initiating agency.
5. Board (i.e. Pharmacy, Chiropractic); if no Board put N/A
6. State requested geographical location or format for the hearing, e.g. Lansing, Detroit, telephone, videoconference.
7. The number given to this case by the initiating or reporting agency.
8. Mandatory time frames or deadlines pertaining to the hearing process of this case.
9. Identify statute, act, code, and/or provision of law used, e.g. MCL 333.1101 *et seq.*
10. A brief statement of the question(s) to be decided at the hearing.
11. Name of person who filled out the Request for Hearing form and contact information.
12. Comments specific to scheduling, such as conflict dates.

### Page 2 of Request for Hearing (sections 13-45)

Mark the corresponding box that designates the party's affiliation to the case (i.e. Petitioner, Department, Petitioner's Attorney, etc.)

List all the parties who should receive documentation from MOAHR (i.e. Notice of Hearing and follow up documents such as an Order for Adjournment or Order for Continuance, etc.) include physical and email address. If the agency has confirmed that a party/representative may be served with documents by email only, please check "Yes".

If your department is listed as the Petitioner or Respondent, you may also use the box labeled "Department" to include personnel who are to receive ongoing documentation in the case.

If your department is neither the Petitioner nor Respondent, use the box labeled "Department" to include personnel who are to receive ongoing documentation in the case.

Use the "Other" box to include non-departmental individuals who do not fit the other criteria above, but who are to receive ongoing documentation in the case.

Parties with the same name but multiple addresses shall be listed separately.
If you need to add more parties than tables provided, please copy page 2 and add additional parties.

**Notice:** <u>Please be sure to submit to MOAHR a copy of the Administrative Complaint, Formal Complaint or other charging document; a copy of the Answer (if any); and/or Appeal document along with the completed Request for Hearing form (RFH).</u>

Submit the completed RFH form and supporting documents by I.D. mail or delivery to MOAHR GA, 611 W. Ottawa 2nd Floor, P.O. Box 30695, Lansing MI 48909 or email MOAHR-General-Adjudication-Scheduling@michigan.gov

**Questions:** Please contact Katie Nelson at nelsonk19@michigan.gov  Tel. (517) 335-2484

MOAHR RFH-01/2021

**THE MICHIGAN CIVIL RIGHTS COMMISSION**
**Cadillac Place**
**3054 W Grand Blvd Ste 3-600**
**Detroit MI  48202**

MICHIGAN DEPARTMENT OF CIVIL RIGHTS,
Ex. Rel., Whitney Hodges, next of kin on behalf
of Honestie Hodges,
Claimant,

                                              Case No:  485649

V

Grand Rapids Police Department,
Respondent.
_____/

Michael J. Pelot (42362)
Staff Attorney
Michigan Department of Civil Rights
Capitol Tower Building
110 W Michigan Ave, Ste 800
Lansing MI  48933
Tele:  517-284-7245
E-mail:  pelotm@michigan.gov

Elizabeth J. Fossel (P41430)
Respondent Attorney
Director of Litigation
City of Grand Rapids – Department of Law
300 Monroe Avenue, NW, Suite 620
Grand Rapids, MI 49503
616-456-3099
efossel@grand-rapids.mi.us

Stephen R. Drew (24323)
Claimant Attorney
Drew Cooper and Anding
80 Ottawa Ave, Ste 200
Grand Rapids MI  49503
616-454-8300
sdrew@dca-lawyers.com
_____/

**<u>CHARGE OF DISCRIMINATION</u>**

1

The complaint of Claimant, Whitney Hodges (WH), on behalf of Honestie Hodges (HH) (deceased), as next of kin, filed with the Michigan Department of Civil Rights, alleges that Respondent, Grand Rapids Police Department, its agents, servants and employees have unlawfully discriminated against the Claimant by treating her unequally based on her Race thereby depriving her of the full and equal enjoyment of civil rights guaranteed by the constitution and laws of the State of Michigan and the United States.

The department, in accordance with its own rules and regulations, informed the Respondent of these allegations, investigated, and found sufficient grounds for the issuance of a charge.  The department endeavored unsuccessfully to conciliate the matter and now issues this charge.

## JURISDICTION

1. That at all times pertinent, the Claimant, an African-American minor child (HH), was a resident of Grand Rapids, Michigan, and protected from unlawful discrimination under the Michigan's Elliott-Larsen Civil Rights Act (ELCRA), Public Act 453.

2. The respondent is a law enforcement agency operating in Michigan whose services, facilities, privileges, advantages, or accommodations are extended, offered, or otherwise made available to the public in the State of Michigan pursuant to Michigan's Elliott-Larsen Civil Rights Act (ELCRA), Public Act 453.

3. The Claimant (HH) had an encounter with the Respondent on December 6, 2017.

4. Claimant (WH) filed a timely, notarized complaint on February 28, 2018 with the Michigan Department of Civil Rights on behalf of her minor child (HH).

### STATEMENT OF FACTS

5.  Claimant (WH), on behalf of her 11-year-old minor African-American daughter (HH), alleges HH was subjected to detention and/or arrest and other terms and conditions of unequal law enforcement by Respondent on December 6, 2017.

6.  The Grand Rapids Police Department (GRPD) was pursuing a middle-aged white woman that matched the description of an attempted murder suspect.

7.  Claimant's daughter, (HH), along with two other people, exited the back door of the house under surveillance. Officers pointed their weapons and ordered the people to halt.

8.  Claimant, (WH), yelled to the officers that HH was only 11 years-old.

9.  GRPD Officer Barberino placed claimant (HH) in handcuffs.

10.  GRPD Officer Dionne searched HH for weapons and placed her handcuffed  in the cruiser.

11.  GRPD Officers did not file a Use of Force Report regarding the handcuff use on HH, a minor child.

12.  Claimant HH was returned to her family after the scene was cleared.

13.  Claimant HH died from COVID-19 in November 2020.

14.  ELCRA provides in section **37.2301 Definitions:**
    As used in this article: …(b) "Public service" means a public facility, department, agency, board, or commission, owned, operated, or managed by or on behalf of the state, a political subdivision, or an agency thereof or a tax exempt private agency established to provide service to the public, except that public service does not include a state or county correctional facility with respect to actions and decisions regarding an individual serving a sentence of imprisonment of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public.

15.  ELCRA further provides in section **37.2302 Public accommodations or services**; prohibited practices:
    Except where permitted by law, a person shall not: (a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or

accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status.

## COUNT 1
## RACIAL DISCRIMINATION
## UNEQUAL SERVICE

16. The previous paragraphs are incorporated in this count.

17. Claimant (HH) was ordered at gunpoint to backup and was detained and/or \ arrested, handcuffed, searched, and placed in the back of a cruiser where she was questioned.

18.  Respondent would have recognized instantly that HH was a young African American child and not the suspected middle-aged white female that they were searching for, however Respondent still detained and/or arrested, handcuffed, searched for weapons, questioned and placed HH alone in a cruiser.

19. Claimant HH was surprised by the officers, did not fit the description of the suspect, was a juvenile and was compliant and visibly afraid in tears.

20. Respondent was unable to produce records of white children that were ordered at gunpoint to backup, arrested, handcuffed, searched, and placed in the back of a cruiser where they were questioned during a search of a house for a grown suspect of a different race.

21. Respondent failed to file a Use of Force Report for handcuffing HH, a minor child.

22.  Claimant HH was treated differently and more harshly because of her race.

4

23.  As a direct and proximate result of respondent's unlawful discrimination, claimant has suffered loss of full and equal enjoyment of a public service due to respondent's actions.

THEREFORE, IT IS REQUESTED THAT AN ORDER BE ISSUED COMPELLING:

A. The respondent pay monetary compensation to the claimant together with interest for humiliation, extreme embarrassment, emotional distress, and mental anguish which he sustained as a result of respondent's unlawful discrimination.

B. Such further relief as the Commission seems just and proper, including reasonable attorney fees.

Date:  7/20/2022 _____    _____
Michael J. Pelot, Attorney

Date:  7/20/22 _____    _____
Marcelina Trevino, Managing Attorney
Michigan Department of Civil Rights
Cadillac Place
3054 W Grand Blvd Ste 3-600
Detroit, MI 48202
313-456-3795
trevinom4@michigan.gov

5

**THE MICHIGAN CIVIL RIGHTS COMMISSION**
**Cadillac Place**
**3054 W Grand Blvd Ste 3-600**
**Detroit MI  48202**


MICHIGAN DEPARTMENT OF CIVIL RIGHTS,
Juanita Ligon on behalf of minor MC-1,
Claimant,

                                                                Case No:  490990

V

City of Grand Rapids/Grand Rapids Police Department (GRPD)
Respondent.
_____/

Alannah M. Buford-Kamerman (P81221)
Staff Attorney
Michigan Department of Civil Rights
Capitol Tower Building
110 W Michigan Ave, Ste 800
Lansing MI  48933
Phone: 517-241-2650
E-mail:  bufordkamermana@michigan.gov

Elizabeth J. Fossel (P41430)
Respondent Attorney
Director of Litigation
City of Grand Rapids – Department of Law
300 Monroe Avenue, NW, Suite 620
Grand Rapids, MI 49503
616-456-3099
efossel@grand-rapids.mi.us

Stephen R. Drew (24323)
Claimant Attorney
Drew Cooper and Anding

80 Ottawa Ave, Ste 200
Grand Rapids MI  49503
616-454-8300
sdrew@dca-lawyers.com
_____/

## CHARGE OF DISCRIMINATION

The complaint of Claimant, Juanita Ligon, on behalf of MC-1[1] filed with the Michigan Department of Civil Rights, alleges that Respondent, the City of Grand Rapids, its agents, servants and employees have unlawfully discriminated against the Claimant by treating MC-1 unequally based on his race and sex thereby depriving him of the full and equal enjoyment of civil rights guaranteed by the constitution and laws of the State of Michigan and the United States.

The Department, in accordance with its own rules and regulations, informed the Respondent of these allegations, investigated, and found sufficient grounds for the issuance of a charge.  The department endeavored unsuccessfully to conciliate the matter and now issues this charge.

---

[1] The number designation is included to distinguish the Claimant from his sibling with the same initials who also has an active case against the same Respondent, MDCR 490991, arising from the same August 26, 2018 incident.

2

## JURISDICTION

1.    That at all times pertinent, the Claimant, the mother to African-American minor male child MC-1, was a resident of Grand Rapids, Michigan, and protected from unlawful discrimination under the Michigan's Elliott-Larsen Civil Rights Act (ELCRA), Public Act 453 of 1976.

2.    The Respondent, the City of Grand Rapids/Grand Rapids Police Department (GRPD), is a law enforcement agency operating in Michigan whose services, facilities, privileges, advantages, or accommodations are extended, offered, or otherwise made available to the public in the State of Michigan pursuant to ELCRA.

3.    The Claimant's minor son, MC-1, had an encounter with the Respondent on August 26, 2018.

4.    Claimant filed a timely, notarized complaint on October 15, 2018 with the Michigan Department of Civil Rights on behalf of her minor African-American son MC-1.

## STATEMENT OF FACTS

5.    Claimant, on behalf of MC-1, alleges that MC-1 was subjected to unequal service by law enforcement public services from Respondent on August 26, 2018.

3

6.    At 8:04 p.m. on Sunday, August 26, 2018, Jayda Sprengelmeyer called 911 to report that two minors were on the train tracks and walking northbound on Alto, near Alto and Griggs in Southeast Grand Rapids with a toy gun.

7.    During the less-than-three-minute call, Sprengelmeyer made at least three references about the gun not being real concluding with, "I'm sure it's not a gun, but I just don't feel like that's the thing they should be doing."

8.    Sprengelmeyer described the race, sex, and shirt colors of the two minors she observed; however, the dispatcher did not obtain information about the minors' pants, shoes, or other identifying characteristics.

9.    At 8:07 p.m., two Grand Rapids Police Department officers, Cody Bechaz and Zane Garnsey, were dispatched with the following information:

    "In the area of Alto and Griggs SE: Black male, approximately 13-years-old carrying possibly a toy gun, not sure. He is wearing a red shirt and walking northbound on Alto with another black male in a black shirt."

10.    Prior to the officers being dispatched, MC-1 and  his brother MC-2 were walking southbound on Eastern Ave being escorted by 17 year-old family

friend Dominic Ezell to Little Caesars located at Little Caesars Pizza, 2045 Eastern Ave SE, Grand Rapids, MI 49507.

11. Also at 8:07 p.m., Officer Zachary Kornoelje  radioed that he was with "61" and asked to be added to the call.

12. Within three minutes at approximately 8:10 p.m., Officer Cody Bechaz was driving northbound on Eastern Avenue SE and observed three boys walking southbound on Eastern Ave. The location of the stop is approximately a half mile southwest in the opposite direction from the location identified by Sprengelmeyer during the 911 call.

13. Officer Bechaz radioed to dispatch, "I think he's out Eastern/Elliott. Can you call the caller back and see if he's wearing red shorts as well?" Officer Bechaz ordered the three boys to stop and they immediately complied.

14. Officer Bechaz asked the ages of the boys and Domonic responded that MC-1 and MC-2 were 11 years old and that he was 17 years old.

15. Less than one minute later, Officer Garnsey, accompanied by Officer Kornoelje, turned onto Jayda Sprengelmeyer's street and drove directly past her home without stopping to obtain the additional information as requested by Officer Bechaz.

16.   Officer Bechaz's In-Car Video shows a full and clear view of the boys'
      actions for the entire five-minutes from Officer Bechaz's initial detainment
      of the boys through Officer Garsney's, Kornoelje, and Brinks arrival, waiting
      to be called back and it shows that they are all compliant to the officers'
      commands.

17.   Officer Brinks' arrived, drew his handgun, and pointed at the boys within
      two minutes of his arrival despite the fact that each boy had complied with
      the officers' commands and initial dispatch call noting that the individuals
      only had a toy gun.

18.   Officer Kornoelje and Officer Garsney arrived on the scene and Brinks told
      Officer Kornoelje that the subject in black (Domonic) was not being one
      hundred percent cooperative, even though the body camera footage from
      Brinks, Kornoelje and Garsney show that each boy was complying with
      commands.

19.   Despite the boys' compliance with commands, ninety (90) seconds after
      Officer Garsney arrived, he radioed to request that southbound traffic be
      shut down on Eastern Avenue, isolating and seizing the three boys at
      gunpoint.

20.  Officer Kornoelje ordered Domonic (who was in black) to walk backwards to him, leaving MC-1 and MC-2, the two 11-year-old boys, by themselves with their hands on their heads and several guns pointed at them by Grand Rapids Police Officers.

21.  Officer Kornoelje ordered Domonic onto his knees and then handcuffed him, searched him, questioned him about guns.

22.  Domonic denied that any of the three boys had any guns and he informed Kornoelje that the three of them were walking southbound to Little Caesar's located at 2045 Eastern Ave SE, Grand Rapids, MI 49507.

23.  Shortly thereafter, Officer Bechaz told MC-2 "Hey, keep your hands on your head, red shirt. Do it. Put your hands on your head. Put your hands on your head now" even though MC-2's hands had been on his head for over 20 continuous seconds prior to the command.

24.  Regardless of MC-2's compliance, Officer Garnsey radioed to dispatch, asking for priority traffic as "the subject in the red shirt's refusing to put his hands on his head."

25.    Officer Kornoelje then ordered MC-1 (who was wearing white) to walk

backwards to him, leaving MC-2 by himself with his hands on top of his

head with guns pointed at him by Grand Rapids Police Officers.

26.    Officer Kornoelje's searched for weapons on MC-1 for though the initial 911

call indicated that all she saw was a toy; Dominic's response that none of

the boys had any weapons; and no weapons being found on Dominic.

27.    During the search of MC-1, three additional officers arrive on the scene and

one officer aimed a high-powered rifle at MC-2 within ten seconds of

arriving, even though MC-2 was compliant with the officers' commands and

had his hands on his head, no weapons had been found on Domonic nor

MC-1, and the initial 911 call was regarding allegations that two minors

were walking in the opposite direction a half mile away with a toy gun.

28.    After no weapons are located on MC-1, an officer ordered MC-1 onto his

knees and then handcuffed him, stood him up, and walked him to the side

of the police cruiser.

29.    The officers opened the door and began to place MC-1 in the back of the

cruiser with handcuffs on, but just prior to doing so, an officer asked his

age, MC-1 told them he is 11, and the handcuffs were removed.

30.    Officers then left MC-1, by himself, in the back of the police cruiser

        unattended and crying.

31.    Officer Brinks ordered MC-2 to walk backward and he was ordered down

        onto his knees.

32.    Even though had already been compliant for over five continuous minutes,

        after walking backwards as directed, an unknown officer then pointed a

        taser at MC-2 while Officer Kornoelje handcuffed MC-2 and searched him

        for weapons.  No weapons were found.

33.    MC-2 provided his and MC-1's mother's (Claimant's) name and telephone

        number to the officers.

34.    Despite all three subjects having been searched and held in custody and no

        weapons found and having knowledge of their mother's  (Claimant's)

        identity, Grand Rapids Police Officers then continued questioning MC-2 and

        left MC-1 in the back of a police cruiser unattended.

35.    After approximately twenty minutes of the stop beginning, MC-1 and MC-

        2's grandfather, William ("Junior") Ragland, drove up to the scene, parked

        his car, and walked over to Officer Brinks, who began to explain the stop to

        Ragland.

36.    Mr. Ragland arrived because he was contacted by neighborhood children and he drove up to the scene. Respondent did not reach out to the minors' family prior to Mr. Ragland's arrival.

37.    After Mr. Ragland arrived, at 0:11:00 of R9-Video 5, MC-1 noticed Ragland's arrival and said "My grandad" and Officer Kornoelje and Officer Mollan then brought MC-1 over to the group after being left in a police cruiser unattended and crying.

38.    MC-1 and MC-2 were released from the officers' custody into Mr. Ragland's custody.

39.    ELCRA provides in section **37.2301 Definitions:**

> As used in this article: …(b) "Public service" means a public facility, department, agency, board, or commission, owned, operated, or managed by or on behalf of the state, a political subdivision, or an agency thereof or a tax exempt private agency established to provide service to the public, except that public service does not include a state or county correctional facility with respect to actions and decisions regarding an individual serving a sentence of imprisonment of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public.

40.    ELCRA further provides in section **37.2302 Public accommodations or services**; prohibited practices:

10

Except where permitted by law, a person shall not: (a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status.

## COUNT 1
## RACIAL DISCRIMINATION
## UNEQUAL SERVICE

41.    Paragraphs 1 – 40 are incorporated in this count.

42.    Claimant's son, MC-1, is African-American.

43.    Claimant's son MC-1 was stopped by officers a half mile southwest from the original dispatched location from the 911 call within six minutes of the call being placed, making it practically impossible that he was the alleged minor with a toy gun, which in and of itself is not a report of a crime.

44.    Claimant's son MC-1 was subjected to being seized at gun point by multiple handguns, a high powered rifle, and a taser by Respondent's officers on the allegation that two minors walking in the opposite direction a half mile away possessed a toy gun despite being compliant with officers' commands, no weapons had been found on Domonic, MC-1 nor MC-2, and the initial 911 call was regarding allegations that two minors were walking

11

in the opposite direction a half mile away with a toy gun which in and of itself is not a report of a crime.

45.  Claimant's son MC-1 was subjected to being unlawfully searched because the allegations of the 911 call did not create reasonable suspicion or probable cause of a crime as all was alleged was two minors with a toy gun, which in and of itself is not a report of a crime.

46.  Furthermore, Claimant's son MC-1 was also subjected to unlawful detainment by Respondent after confirming Domonic, MC-1 and MC-2 had no weapons.

47.  Claimant's son MC-1 was treated unfairly and unequally by Respondent because of his race.

48.  As a direct and proximate result of Respondent's unlawful discrimination, claimant has suffered loss of full and equal enjoyment of a public service due to Respondent's actions.

**COUNT 2**
**SEX DISCRIMINATION**
**UNEQUAL SERVICE**

49.  The previous paragraphs are incorporated in this count.

50.  Claimant's son, MC-1, is male.

51.  Claimant's son MC-1 was stopped by officers a half mile southwest from the original dispatched location from the 911 call within six minutes of the call being placed, making it practically impossible that he was the alleged youth with a toy gun, which in and of itself is not a report of a crime.

52.  Claimant's son MC-1 was subjected to being seized at gun point by multiple handguns, a high powered rifle, and a taser by Respondent's officers on the allegation that two minors walking in the opposite direction a half mile away possessed a toy gun despite being compliant with officers' commands, no weapons had been found on Domonic, MC-1 nor MC-2, and the initial 911 call was regarding allegations that two minors were walking in the opposite direction a half mile away with a toy gun which in and of itself is not a report of a crime.

53.  Claimant's son MC-1 was subjected to being unlawfully searched because the allegations of the 911 call did not create reasonable suspicion or probable cause of a crime as all was alleged was two minors with a toy gun, which in and of itself is not a report of a crime.

54. Furthermore, Claimant's son MC-1 was also subjected to unlawful detainment by Respondent after confirming Domonic, MC-1 and MC-2 had no weapons.

55. Claimant's son MC-1 was treated unfairly and unequally by Respondent's because of his sex.

56. As a direct and proximate result of Respondent's unlawful discrimination, Claimant has suffered loss of full and equal enjoyment of a public service due to Respondent's actions.

## **REQUESTED RELIEF**

Therefore, it is requested that an order be issued compelling:

A. The Respondent pay monetary compensation to the claimant together with interest for humiliation, extreme embarrassment, emotional distress, and mental anguish which he sustained as a result of respondent's unlawful discrimination.

B. Such further relief as the Commission seems just and proper, including reasonable attorney fees.


Date:    December 14, 2022        _/s/ Alannah M. Buford-Kamerman_

Alannah M. Buford-Kamerman (P81221)

Office of Legal Affairs
Michigan Department of Civil Rights
Capitol Tower Building
110 W Michigan Ave, Ste. 800
Lansing, MI 48933
<u>517-335-3165</u>
<u>bufordkamermana@michigan.gov</u>

Date: December 14, 2022      <u>/s/     Marcelina Trevino            </u>
Marcelina Trevino, Managing Attorney
Michigan Department of Civil Rights
Cadillac Place
3054 W Grand Blvd Ste 3-600
Detroit, MI 48202
313-456-3795
<u>trevinom4@michigan.gov</u>

**THE MICHIGAN CIVIL RIGHTS COMMISSION**
**Cadillac Place**
**3054 W Grand Blvd Ste 3-600**
**Detroit MI  48202**


MICHIGAN DEPARTMENT OF CIVIL RIGHTS,
Juanita Ligon on behalf of minor MC-2,
Claimant,

                                                          Case No:  490991

V

City of Grand Rapids/Grand Rapids Police Department (GRPD)
Respondent.
_____/

Alannah M. Buford-Kamerman (P81221)
Staff Attorney
Michigan Department of Civil Rights
Capitol Tower Building
110 W Michigan Ave, Ste 800
Lansing MI  48933
Phone: 517-241-2650
E-mail:  bufordkamermana@michigan.gov

Elizabeth J. Fossel (P41430)
Respondent Attorney
Director of Litigation
City of Grand Rapids – Department of Law
300 Monroe Avenue, NW, Suite 620
Grand Rapids, MI 49503
616-456-3099
efossel@grand-rapids.mi.us

Stephen R. Drew (24323)
Claimant Attorney
Drew Cooper and Anding

80 Ottawa Ave, Ste 200
Grand Rapids MI  49503
616-454-8300
sdrew@dca-lawyers.com
_____/

## **CHARGE OF DISCRIMINATION**

The complaint of Claimant, Juanita Ligon, on behalf of MC-2[1] filed with the Michigan Department of Civil Rights, alleges that Respondent, the City of Grand Rapids/Grand Rapids Police Department ("GRPD"), its agents, servants and employees have unlawfully discriminated against the Claimant by treating MC-2 unequally based on his race and sex thereby depriving him of the full and equal enjoyment of civil rights guaranteed by the constitution and laws of the State of Michigan and the United States.

The Department, in accordance with its own rules and regulations, informed the Respondent of these allegations, investigated, and found sufficient grounds for the issuance of a charge.  The department endeavored unsuccessfully to conciliate the matter and now issues this charge.

---

[1] The number designation is included to distinguish the Claimant from his sibling with the same initials who also has an active case against the same Respondent, MDCR 490990, arising from the same August 26, 2018 incident.

2

## JURISDICTION

1.    That at all times pertinent, the Claimant, the mother to African-American minor male child MC-2, was a resident of Grand Rapids, Michigan, and protected from unlawful discrimination under the Michigan's Elliott-Larsen Civil Rights Act (ELCRA), Public Act 453 of 1976.

2.    The Respondent City of Grand Rapids/GRPD is a law enforcement agency operating in Michigan whose services, facilities, privileges, advantages, or accommodations are extended, offered, or otherwise made available to the public in the State of Michigan pursuant to ELCRA.

3.    The Claimant's minor son, MC-2, had an encounter with the Respondent on August 26, 2018.

4.    Claimant filed a timely, notarized complaint on October 15, 2018 with the Michigan Department of Civil Rights on behalf of her minor African-American son MC-2.

## STATEMENT OF FACTS

5.    Claimant, on behalf of MC-2, alleges that MC-2 was subjected to unequal service by law enforcement public services from Respondent on August 26, 2018.

6.    At 8:04 p.m. on Sunday, August 26, 2018, Jayda Sprengelmeyer called 911 to report that two minors were near train tracks and walking northbound on Alto, near Alto and Griggs in Southeast Grand Rapids with a toy gun.

7.    During the less-than-three-minute call, Sprengelmeyer made at least three references about the gun not being real concluding, "I'm sure it's not a gun, but I just don't feel like that's the thing they should be doing."

8.    Sprengelmeyer described the race, sex, and shirt colors of the two minors that she observed, however, the dispatcher did not obtain information about the minors' pants, shoes, or other identifying characteristics.

9.    At 8:07 p.m., two Grand Rapids Police Department officers, Cody Bechaz and Zane Garnsey, were dispatched with the following information:

> "In the area of Alto and Griggs SE: Black male, approximately 13-years-old carrying possibly a toy gun, not sure. He is wearing a red shirt and walking northbound on Alto with another black male in a black shirt."

10.    Prior to the officers being dispatched, MC-2 and his brother MC-1 were walking southbound on Eastern Ave being escorted by 17 year-old family friend Domonic Ezell to Little Caesars located at Little Caesars Pizza, 2045 Eastern Ave SE, Grand Rapids, MI 49507.

4

11.    Also at 8:07 p.m., Officer Zachary Kornoelje radioed that he was with "61"

and asked to be added to the call.

12.    Within three minutes at approximately 8:10 p.m., Officer Cody Bechaz was

driving northbound on Eastern Avenue SE and observed three boys walking

southbound on Eastern Ave. The location of the stop is approximately a half

mile southwest in the opposite direction from the location identified by

Sprengelmeyer during the 911 call.

13.    Officer Bechaz radioed to dispatch, "I think he's out Eastern/Elliott. Can you

call the caller back and see if he's wearing red shorts as well?" Officer

Bechaz ordered the three boys to stop and they immediately complied.

14.    Officer Bechaz asked the ages of the boys and Domonic responded that

MC-1 and MC-2 were 11 years old and that he was 17 years old.

15.    Less than one minute later, Officer Garnsey, accompanied by Officer

Kornoelje, turned onto Jayda Sprengelmeyer's street and drove directly

past her home without stopping to obtain the additional information

requested by Officer Bechaz.

16.    Officer Bechaz's In-Car Video shows a full and clear view of the boys'

actions for the entire five-minutes from Officer Bechaz's initial detainment

of the boys through Officer Garsney's, Kornoelje, and Brinks arrival, waiting

to be called back and it shows that they are all compliant with the officers' commands.

17.   Officer Brinks' arrived, drew his handgun, and pointed it at the boys within two minutes of his arrival despite the fact that each boy had complied with the officers' commands and initial dispatch call was regarding allegations that two minors were walking in the opposite direction a half mile away with a toy gun.

18.   Officer Kornoelje and Officer Garnsey arrived on the scene and Brinks told Officer Kornoelje that the subject in black (Domonic) was not being one hundred percent cooperative, even though the body camera footage from Brinks, Kornoelje and Garsney show that each boy was complying with commands.

19.   Despite the boys' compliance with commands, ninety (90) seconds after Officer Garnsey arrived, he radioed to request that southbound traffic be shut down on Eastern Avenue, isolating and seizing the three boys at gunpoint.

20.   Officer Kornoelje ordered Domonic (who was in black) to walk backwards to him, leaving MC-1 and MC-2, the two 11-year-old boys, by themselves with

their hands on their heads and several guns pointed at them by Grand Rapids Police Officers.

21.    Officer Kornoelje ordered Domonic onto his knees and then handcuffed him, searched him, questioned him about guns.

22.    Domonic denied that any of the three boys had any guns and he informed Kornoelje that the three of them were walking southbound to Little Caesar's located at 2045 Eastern Ave SE, Grand Rapids, MI 49507.

23.    Shortly thereafter, Officer Bechaz told MC-2 "Hey, keep your hands on your head, red shirt. Do it. Put your hands on your head. Put your hands on your head now" even though MC-2's hands had been on his head for over 20 continuous seconds prior to the command.

24.    Regardless of MC-2's compliance, Officer Garnsey radioed to dispatch, asking for priority traffic as "the subject in the red shirt's refusing to put his hands on his head."

25.    Officer Kornoelje then ordered MC-1 (who was wearing white) to walk backwards to him, leaving MC-2 by himself with his hands on top of his head with guns pointed at him by Grand Rapids Police Officers.

26.    Officer Kornoelje's searched for weapons on MC-1 even though the initial 911 call indicated that all she observed was a toy; Domonic's response that

7

none of the boys had any weapons; and no weapons being found on Domonic.

27. During the search of MC-1, three additional officers arrive on the scene and one officer aimed a high-powered rifle at MC-2 within ten seconds of arriving, even though MC-2 was compliant with the officers' commands and had his hands on his head, no weapons had been found on Domonic nor MC-1, and the initial 911 call was regarding allegations that two minors were walking in the opposite direction a half mile away with a toy gun.

28. After no weapons are located on MC-1, an officer ordered MC-1 onto his knees and then handcuffed him, stood him up, and walked him to the side of the police cruiser.

29. An unknown officer called back MC-2 at 0:08:16 of Brinks' body cam, meaning that MC-2 was required to stand in the middle of a street with a high-powered rifle and multiple handguns pointed at him for several continuous minutes even though the initial 911 call was regarding allegations that two minors were walking in the opposite direction a half mile away with a toy gun.

30. Officer Brinks then ordered MC-2 to walk backward and ordered down onto his knees.

31. Even though MC-2 had already been compliant for over five continuous minutes, after walking backwards as directed, an unknown officer then pointed a taser at MC-2 while Officer Kornoelje handcuffed MC-2 and searched him for weapons.  No weapons were found.

32. MC-2 provided his and MC-1's mother's name (Claimant's name) and telephone number to the officers.

33. Despite all three subjects having been searched and held in custody and no weapons being found and having knowledge of their mother's (Claimant's) identity, Grand Rapids Police Officers questioned MC-2 and left MC-1 in the back of a police cruiser unattended for several minutes.

34. After approximately twenty minutes of the stop beginning, MC-1 and MC-2's grandfather, William ("Junior") Ragland, drove up to the scene, parked his car, and walked over to Officer Brinks, who began to explain the stop.

35. Mr. Ragland arrived because he was contacted by neighborhood children and he drove up to the scene. Respondent did not reach out to the minors' family prior to Mr.Ragland's arrival.

36. MC-1 and MC-2 were released from the officers' custody into Ragland's custody.

37. ELCRA provides in section **37.2301 Definitions:**

9

As used in this article: ...(b) "Public service" means a public facility, department, agency, board, or commission, owned, operated, or managed by or on behalf of the state, a political subdivision, or an agency thereof or a tax exempt private agency established to provide service to the public, except that public service does not include a state or county correctional facility with respect to actions and decisions regarding an individual serving a sentence of imprisonment of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public.

38. ELCRA further provides in section **37.2302 Public accommodations or services**; prohibited practices:

Except where permitted by law, a person shall not: (a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status.

## COUNT 1
## RACIAL DISCRIMINATION
## UNEQUAL SERVICE

39. Paragraphs 1 - 38 are incorporated in this count.

40. Claimant's son, MC-2, is African-American.

41. Claimant's son MC-2 was stopped by officers a half mile southwest from the original dispatched location from the 911 call within six minutes of the

call being placed, making it practically impossible that he was the alleged youth with a toy gun, which in and of itself is not a report of a crime.

42. Claimant's son MC-2 was subjected to being seized at gun point by multiple handguns, a high powered rifle, and a taser by Respondent's officers on the allegation that two minors walking in the opposite direction a half mile away possessed a toy gun despite being compliant with officers' commands, no weapons had been found on Domonic nor MC-1, and the initial 911 call was regarding allegations that two minors were walking in the opposite direction a half mile away with a toy gun which in and of itself is not a report of a crime.

43. Claimant's son MC-2 was subjected to being unlawfully searched because the allegations of the 911 call did not create reasonable suspicion or probable cause of a crime as all was alleged was two minors with a toy gun, which in and of itself is not a report of a crime.

44. Furthermore, Claimant's son MC-2 was also subjected to unlawful detainment by Respondent after confirming Domonic, MC-1 and MC-2 had no weapons.

45. Claimant's son MC-2 received unfair and unequal treatment by Respondent because of his race.

46.    As a direct and proximate result of Respondent's unlawful discrimination, claimant suffered loss of full and equal enjoyment of a public service due to Respondent's actions.

**COUNT 2**
**SEX DISCRIMINATION**
**UNEQUAL SERVICE**

47.    Paragraphs 1 – 46 are incorporated in this count.

48.    Claimant's son, MC-2, is male.

49.    Claimant's son MC-2 was stopped by officers a half mile southwest from the original dispatched location from the 911 call within six minutes of the call being placed, making it practically impossible that he was the alleged youth with a toy gun, which in and of itself is not a report of a crime.

50.    Claimant's son MC-2 was subjected to being seized at gun point by multiple handguns, a high powered rifle, and a taser by Respondent's officers on the allegation that two minors walking in the opposite direction a half mile away possessed a toy gun despite being compliant with officers' commands, no weapons had been found on Domonic nor MC-1, and the initial 911 call was regarding allegations that two minors were walking in the opposite direction a half mile away with a toy gun which in and of itself is not a report of a crime.

51.  Claimant's son MC-2 was subjected to being unlawfully searched because the allegations of the 911 call did not create reasonable suspicion or probable cause of a crime as all was alleged was two minors with a toy gun, which in and of itself is not a report of a crime.

52.  Furthermore, Claimant's son MC-2 was also subjected to unlawful detainment by Respondent after confirming Domonic, MC-1 and MC-2 had no weapons.

53.  Claimant's son MC-2 received unfair and unequal treatment by Respondent because of his sex.

54.  As a direct and proximate result of Respondent's unlawful discrimination, claimant has suffered loss of full and equal enjoyment of a public service due to Respondent's actions.

## **REQUESTED RELIEF**

Therefore, it is requested that an order be issued compelling:

A.  The Respondent pay monetary compensation to the claimant together with interest for humiliation, extreme embarrassment, emotional distress, and mental anguish which he sustained as a result of respondent's unlawful discrimination.

13

B. Such further relief as the Commission seems just and proper, including

reasonable attorney fees.


Date:    December 14, 2022        /s/ Alannah M. Buford-Kamerman

                                              Alannah M. Buford-Kamerman (P81221)
                                              Office of Legal Affairs
                                              Michigan Department of Civil Rights
                                              Capitol Tower Building
                                              110 W Michigan Ave, Ste. 800
                                              Lansing, MI 48933
                                              517-335-3165
                                              bufordkamermana@michigan.gov


Date:    December 14, 2022        /s/ Marcelina Trevino

                                              Marcelina Trevino, Managing Attorney
                                              Michigan Department of Civil Rights
                                              Cadillac Place
                                              3054 W Grand Blvd Ste 3-600
                                              Detroit, MI 48202
                                              313-456-3795
                                              trevinom4@michigan.gov

# Michigan Office of Administrative Hearings and Rules
## REQUEST FOR HEARING

**RECEIVED**

**JUL 2 0 2022**

Michigan Office Of Administrative
Hearings and Rules

| | |
|---|---|
| **1. IN THE MATTER OF:**<br>Michigan Department of Civil Rights ex rel Melissa Mason<br><br>v<br><br>Grand Rapids Police Department | |
| **2. CASE TYPE**<br>Rule 12 Hearing - Unequal Public Service - Race | **3. AGENCY**<br>MDCR |
| **4. DIVISION**<br>Legal | **5. BOARD**<br>Michigan Civil Rights Commission |

**6. GEOGRAPHIC LOCATION OR FORMAT FOR HEARING**
Lansing or GR

| | |
|---|---|
| **7. INITIATING AGENCY'S FILE NUMBER**<br>610406 | **8. STATUTORY START DATE**<br>Within a reasonable time and according to the rules. |

**9. STATUTE, RULE, OR REGULATION**
Elliott-Larsen Civil Rights Act 37.2301 and 2302.

**10. ISSUE**
Was Melissa Mason treated differently because of her race by GRPD when they handcuffed her and placed her in the back of a cruiser for having an expired operator's license?

| **11. PREPARED BY**<br>Michael Pelot | **PHONE NUMBER**<br>517-284-7245 | **FAX NUMBER**<br>517-241-3963 | **DATE PREPARED**<br>7/20/2022 |
|---|---|---|---|

**12. COMMENTS**

For MOAHR Use Only

| **DATE RECEIVED** | **DATE COMPLETED** | **COMPLETED BY** |
|---|---|---|
| **DOCKET NUMBER** | | **ALJ ASSIGNED** |

**COMMENTS**

MOAHR RFH-01/2021

MCL 24.201 *et seq.*

https://www.michigan.gov/moahr
611 W. Ottawa - 2nd Floor
Lansing, MI 48909

1 | P a g e
Phone: 517-335-2484

## REQUEST FOR HEARING

| 13. CHECK ONE (X) | ☐ Petitioner | ☐ Respondent | ☐ Intervenor | ☒ Department |
|---|---|---|---|---|
| | ☐ Petitioner's Attorney | ☐ Respondent's Attorney | ☐ Intervenor's Attorney | ☐ Other |
| | ☐ Petitioner's Representative | ☐ Respondent's Representative | ☐ Intervenor's Representative | |

**14. NAME**
Michael J. Pelot

**15. FIRM**
MDCR

**16. ON BEHALF OF**
MDCR

**17. STREET ADDRESS/P.O. BOX**
110 W Michigan Ave Ste 800

| 18. CITY | 19. STATE | 20. ZIP CODE | 21. PHONE | 22. FAX |
|---|---|---|---|---|
| Lansing | MI | 48933 | 517-284-7245 | 517-241-3963 |

| 23. EMAIL ADDRESS | May documents be served to this party/representative via email only? | Yes | No |
|---|---|---|---|
| pelotm@michigan.gov | | ☒ | ☐ |

| 24. CHECK ONE (X) | ☐ Petitioner | ☐ Respondent | ☐ Intervenor | ☐ Department |
|---|---|---|---|---|
| | ☐ Petitioner's Attorney | ☒ Respondent's Attorney | ☐ Intervenor's Attorney | ☐ Other |
| | ☐ Petitioner's Representative | ☐ Respondent's Representative | ☐ Intervenor's Representative | |

**25. NAME**
Tony Koenig

**26. FIRM**
City of Grand Rapids Law Department

**27. ON BEHALF OF**
Grand Rapids Police Department

**28. STREET ADDRESS/P.O. BOX**
300 Monroe Ave NW Ste 620

| 29. CITY | 30. STATE | 31. ZIP CODE | 32. PHONE | 33. FAX |
|---|---|---|---|---|
| Grand Rapids | MI | 49503 | 616-456-4029 | |

| 34.EMAIL ADDRESS | May documents be served to this party/representative via email only? | Yes | No |
|---|---|---|---|
| tkoenig@grcity.us | | ☒ | ☐ |

| 35. CHECK ONE (X) | ☐ Petitioner | ☐ Respondent | ☐ Intervenor | ☐ Department |
|---|---|---|---|---|
| | ☐ Petitioner's Attorney | ☐ Respondent's Attorney | ☐ Intervenor's Attorney | ☐ Other |
| | ☐ Petitioner's Representative | ☐ Respondent's Representative | ☐ Intervenor's Representative | |

**36. NAME**

**37. FIRM**

**38. ON BEHALF OF**

**39. STREET ADDRESS/P.O. BOX**

| 40. CITY | 41. STATE | 42. ZIP CODE | 43. PHONE | 44. FAX |
|---|---|---|---|---|
| | | | | |

| 45.EMAIL ADDRESS | May documents be served to this party/representative via email only? | Yes | No |
|---|---|---|---|
| | | ☐ | ☐ |

MOAHR RFH-01/2021

# REQUEST FOR HEARING

## Instructions to Complete Form

### Page 1 of Request for Hearing

1. List Petitioner v. Respondent with the proper names and titles.
2. The type of action involved in this hearing, e.g. Disciplinary, Denial of License, Summary Suspension.
3. State agency name.
4. Division within the initiating agency.
5. Board (i.e. Pharmacy, Chiropractic); if no Board put N/A
6. State requested geographical location or format for the hearing, e.g. Lansing, Detroit, telephone, videoconference.
7. The number given to this case by the initiating or reporting agency.
8. Mandatory time frames or deadlines pertaining to the hearing process of this case.
9. Identify statute, act, code, and/or provision of law used, e.g. MCL 333.1101 *et seq.*
10. A brief statement of the question(s) to be decided at the hearing.
11. Name of person who filled out the Request for Hearing form and contact information.
12. Comments specific to scheduling, such as conflict dates.

### Page 2 of Request for Hearing (sections 13-45)

Mark the corresponding box that designates the party's affiliation to the case (i.e. Petitioner, Department, Petitioner's Attorney, etc.)

List all the parties who should receive documentation from MOAHR (i.e. Notice of Hearing and follow up documents such as an Order for Adjournment or Order for Continuance, etc.) include physical and email address. If the agency has confirmed that a party/representative may be served with documents by email only, please check "Yes".

If your department is listed as the Petitioner or Respondent, you may also use the box labeled "Department" to include personnel who are to receive ongoing documentation in the case.

If your department is neither the Petitioner nor Respondent, use the box labeled "Department" to include personnel who are to receive ongoing documentation in the case.

Use the "Other" box to include non-departmental individuals who do not fit the other criteria above, but who are to receive ongoing documentation in the case.

Parties with the same name but multiple addresses shall be listed separately.
If you need to add more parties than tables provided, please copy page 2 and add additional parties.

**Notice:** Please be sure to submit to MOAHR a copy of the Administrative Complaint, Formal Complaint or other charging document; a copy of the Answer (if any); and/or Appeal document along with the completed Request for Hearing form (RFH).

Submit the completed RFH form and supporting documents by I.D. mail or delivery to MOAHR GA, 611 W. Ottawa 2nd Floor, P.O. Box 30695, Lansing MI 48909 or email MOAHR-General-Adjudication-Scheduling@michigan.gov

**Questions:** Please contact Katie Nelson at nelsonk19@michigan.gov  Tel. (517) 335-2484

MOAHR RFH-01/2021

**THE MICHIGAN CIVIL RIGHTS COMMISSION**
**Cadillac Place**
**3054 W Grand Blvd Ste 3-600**
**Detroit MI  48202**

MICHIGAN DEPARTMENT OF CIVIL RIGHTS,
Ex. Rel., Melissa Mason,
Claimant,

Case No:  610406

V

Grand Rapids Police Department,
Respondent.

_____/

Michael J. Pelot (42362)
Staff Attorney
Michigan Department of Civil Rights
Capitol Tower Building
110 W Michigan Ave, Ste 800
Lansing MI  48933
Tele:  517-284-7245
E-mail:  pelotm@michigan.gov

Tony Koenig (P72367)
Assistant City Attorney
300 Monroe Avenue, NW, Suite 620
Grand Rapids, MI 49503
616-456-4029
E-mail: tkoenig@grcity.us

_____/

## CHARGE OF DISCRIMINATION

The complaint of Claimant, Melissa Mason, filed with the Michigan

Department of Civil Rights, alleges that respondent, Grand Rapids Police Department,

its agents, servants, and employees have unlawfully discriminated against the

1

Claimant by treating her unequally based on her Race thereby depriving her of the full and equal enjoyment of civil rights guaranteed by the constitution and laws of the State of Michigan and the United States.

The department, in accordance with its own rules and regulations, informed the Respondent of these allegations, investigated and found sufficient grounds for the issuance of a charge.  The department endeavored unsuccessfully to conciliate the matter and now issues this charge.

### JURISDICTION

1.  That at all times pertinent, the Claimant, an African American individual, was a resident of Grand Rapids, Michigan, and protected from unlawful discrimination under the Michigan's Elliott-Larsen Civil Rights Act (ELCRA), Public Act 453.

2.  The Respondent is a law enforcement agency operating in Michigan whose services, facilities, privileges, advantages, or accommodations are extended, offered, or otherwise made available to the public in the State of Michigan pursuant to Michigan's Elliott-Larsen Civil Rights Act (ELCRA), Public Act 453.

3.  The Claimant had an encounter with the Respondent on January 25, 2020.

4.  Claimant filed a complaint with the Michigan Department of Civil Rights on June 10, 2020.

2

## STATEMENT OF FACTS

5.  On January 25, 2020, Claimant, an African American individual, was driving a Chevy Impala traveling northbound on Eastern Ave SE, Grand Rapids, MI turned on to Hall Street and was then stopped by Respondent, Grand Rapids Police Department (GRPD), for an alleged violation of Michigan Vehicle Code Section 257.255 - Expired Registration Plate.

6.  GRPD Officer Vanden Berg explained the reason for the traffic stop and requested claimant's driver's license, registration, and insurance.

7.  Claimant acknowledged that her plate had expired and that she planned to renew it Monday. Claimant fully complied with the officer's requests and supplied her driver's license, registration, and insurance.

8.  Two other police vehicles arrived at the scene with two officers in each vehicle.

9.  Claimant was wearing a shirt that said, "Black Lives Matter," which was visible to Officer Vanden Berg and the other officers. Claimant also stated to the officers, "Black Lives Matter."

10. The other officers were also near Claimant's vehicle, and Officer Michael Tagliavia had his hand on his gun even though Claimant was compliant with all of Officer Vanden Berg's requests.

11. Officer Vanden Berg found that Claimant's driver's license and registration were expired.

3

12. Officer Vanden Berg asked Claimant to exit her vehicle, she was then handcuffed and placed in the back seat of the police cruiser.

13. Claimant asked if she was being arrested, to which Officer Vanden Berg responded that he did not say she was going to jail.

14. Claimant was arrested in Officer Vanden Berg's vehicle for twenty (20) minutes even though she was not under arrest.

15. Officer Vanden Berg stated to Claimant when she was in the cruiser, "Well, since you stopped running your mouth, we'll let you go."

16. Officer Vanden Berg then issued Claimant a citation for driving with an expired driver's license, a misdemeanor, and an expired registration, a civil infraction.

17. ELCRA provides in section **37.2301 Definitions:**

> As used in this article: ...(b) "Public service" means a public facility, department, agency, board, or commission, owned, operated, or managed by or on behalf of the state, a political subdivision, or an agency thereof or a tax exempt private agency established to provide service to the public, except that public service does not include a state or county correctional facility with respect to actions and decisions regarding an individual serving a sentence of imprisonment of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public.

18. ELCRA further provides in section **37.2302 Public accommodations or services: prohibited practices:**

> Except where permitted by law, a person shall not: (a) Deny an individual the full and equal enjoyment of the goods, services,

4

facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status.

## COUNT 1

## UNEQUAL SERVICE

19.  The previous paragraphs are incorporated in this count.

20.  The Claimant is an African American individual and Race is a protected class that is covered by the ELCRA.

21.  Claimant was driving on Hall Street in Grand Rapids, Michigan, with three children as passengers when she was stopped for expired registration plate.

22.  The Officers asked Claimant to step out of the vehicle, handcuffed her, placed her in the back seat of a police cruiser and was arrested for about twenty (20) minutes.

23.  Respondent was unable to show similarly situated persons of another Race were treated the same as Claimant.

24.  Respondent did not provide a legitimate reason for the unequal service provided to Claimant.

25.  Claimant has shown that the legitimate reason given by the Respondent that Claimant was noncompliant is pretext for Race discrimination.

26.  A 2017 GRPD Traffic Stop Data Analysis Report for the City of Grand Rapids by John Lamberth and Jerry Clayton found a statistical difference in the rate of Black motorists subjected to search compared to a lower rate for White motorists, despite

no increase in contraband found per search.  The report recommended increased reporting of data for future analysis to determine race-based animus or bias often present as unconscious and implicit bias and seemingly automatic and reflexive use of force that manifests systemic and individually motivated discrimination.

27. Claimant was denied the full and equal enjoyment of the services of a public service because of her Race.

### PRAYER FOR RELIEF

THEREFORE, IT IS REQUESTED THAT AN ORDER BE ISSUED COMPELLING:

A. The Respondent pay monetary compensation to the Claimant together with interest for humiliation, extreme embarrassment, emotional distress, and mental anguish which she sustained as a result of respondent's unlawful discrimination.

B. Such further relief as the Commission seems just, equitable and proper, including reasonable attorney fees.

Date: 7/20/2022

Michael J. Pelot, Staff Attorney
Michigan Department of Civil Rights
Capitol Tower Building
110 W Michigan Ave, Ste 800
Lansing, MI  48840
517-284-7245
pelotm@michigan.gov

Date:    7/20/22

Marcelina Trevino, Managing Attorney
Michigan Department of Civil Rights
Cadillac Place
3054 W Grand Blvd Ste 3-600
Detroit, MI 48202
313-456-3795
trevinom4@michigan.gov

7