UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERMAINE WILL DAVIS,                          Case No. 1:22-cv-332
                                              Hon. Janet T. Neff

          Plaintiff,

vs.

CITY OF GRAND RAPIDS, et al,

          Defendants.

| | |
|---|---|
| THE MICHIGAN LAW FIRM, PC | Elizabeth J. Fossel (P41430) |
| Racine M. Miller (P72612) | Sarah J. Hartman (P71458) |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 135 N. Old Woodward  Ste 270 | City of Grand Rapids Law Dept. |
| Birmingham, MI 48009 | 300 Monroe Ave. NW, Ste. 620 |
| Phone: 844.464.3476 | Grand Rapids, MI 49503 |
| racine@themichiganlawfirm.com | Phone: 616.456.1318 |
| | efossel@grand-rapids.mi.us |
| | shartman@grand-rapids.mi.us |

## PLAINTIFF'S RESPONSE TO MOTION FOR JUDGMENT ON THE PLEADINGS AN/OR TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

***Oral Argument Requested***

1

# TABLE OF CONTENTS

I.  TABLE OF AUTHORITIES.................................................................................ii

II.  INTRODUCTION ......................................................................................1

   A.  Procedural History.............................................................................2

   B.  Claims in Plaintiffs Second Amended Complaint .................................2

III. FACTUAL BACKGROUND ....................................................................2

   A.  The February 1, 2020 Complaint Regarding Firearm Brandishing ........2

   B.  The March 18, 2021 Stop ...................................................................3

IV. STANDARD OF REVIEW .....................................................................4

V.  LAW AND ARGUMENT .......................................................................5

   A.  §1983 and Qualified Immunity...........................................................9

      1.  Officer Shawn Harmon..............................................................10

      2.  Officer Evan Saxe.....................................................................10

      3.  Officer Doe...............................................................................11

   B.  Civil Conspiracy. ............................................................................11

   C.  False Arrest/ Imprisonment and State-law Immunity ..........................11

   D.  Official Capacity Claim as to Chief Payne..........................................12

   E.  Municipal Liability Claim.................................................................12

      1.  *Monell* Claim...........................................................................13

   F.  Due Process Violation ......................................................................14

   G.  Violation of the Equal Protection Clause ...........................................15

   H.  Elliott-Larsen Civil Rights Act (ELCRA)..........................................16

VI. CONCLUSION.....................................................................................17

## I.    TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 674–75, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ...........................................................................................................5

*Barnes v. Winchell*, 105 F.3d 1111, 1114 (6th Cir. 1997).............................5

*Bd. of Comm'rs v. Brown,* 520 U.S. 397,404,117 S. Ct. 1382, 1388, 13 7 L. Ed. 2d 626 (1997) ............................................................................................. 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ...........................................................................................................5

*Brown v Lewis*, 779 F.2d 401, 413 (2015)....................................................9

*Buddenberg v Weisdack*, 939 F.3d 732, 738-39 (6th Cir. 2003) ......................10

*Crawford v Tilley*, 15 F.4th 752, 762-62 (6th Cir. 2021) ..........................................9

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano,* 648 F.3d 365, 369 (6th Cir. 2011) ...........................................................................................................5

*Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) ...........................................................................................................8

*Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994) ............................................... 14

*Draper v. United States*, 358 U.S. 307, 313 (1959) .............................................8

*Fluellen v. U.S. Dep't of Justice Drug Enforcement Admin.*, 816 F. Supp. 1206, 1215 (E.D. Mich. 1993) ............................................................................. 13

*Foster v. Walsh*, 864 F.2d 416, 419 (6th Cir. 1988) ....................................... 13

*Furlow v. Belmar*, 52 F.4th 393, 404–05 (8th Cir. 2022)....................................6

*Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir. 1994) ................. 12

*Humphrey v. Mabry*, 482 F.3d 840, 848 (6th Cir. 2007) .........................................9

*Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010) .............................15, 16

*Laise v. City of Utica*, 970 F. Supp. 605, 608 (E.D. Mich. 1997).....................13

*Myers v. City of Centerville,* 41 F.4th 746 (6th Cir. 2022)..................................9

*People v. Nguyen*, 854 N.W.2d 223, 233 (Mich. App. 2014)............................8

*Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 312 (6th Cir. 2005) ......... 15

*Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 120 S. Ct. 2097, 147 LEd.2d 105 (2000)....................................................................................17

*Riley v. California*, 573 U.S. 373, 381 (2014) .............................................8

*U.S. v. Byrd*, 211 F.3d 1270 (6th Cir. 2000)...............................................1

*United States v. Heisman*, 503 F.2d 1284, 1286–87, 1289–90 (8th Cir. 1974)..7

*United States v. Hensley,* 469 U.S. 221, 232–33, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) ....................................................................................................6, 7

*United States v. Lyons*, 687 F.3d 754, 767 (6th Cir. 2012)..................................6

*United States v. Stratton*, 453 F.2d 36, 37 (8th Cir. 1972) ...............................7

*Whitely v. Warden*, 401 U.S. 560 (1971) ..............................................1, 2, 6

**Statutes**

Elliott-Larsen Civil Rights Act ..........................................................................16, 17

**Other Authorities**

U.S. CONST. AMEND. IV ............................................................... passim
U.S. CONST. AMEND. XIV ..............................................................15, 17

**Rules**

Fed. R. Civ. P. 12................................................................................2, 4, 18

II.    __INTRODUCTION__

This case involves a March 2021 incident where Plaintiff Jermaine Davis was unlawfully and unreasonably surveilled, stopped, handcuffed, and detained.  The search and seizure were conducted by unnamed Grand Rapids police officers who reasonably and objectively relied upon the information given them by the named Defendant officers.  Plaintiff acknowledges the "fellow officer" rule as set forth in *Whitely v. Warden*, 401 U.S. 560 (1971): police officers called upon to aid other officers in the execution of an arrest warrant are entitled to act on the strength of an official communication with the other officers, ***because the acting officers can assume that the communicating officers satisfied the probable cause requirement of the Fourth Amendment***.[1]  The Fourth Amendment[2] allows room for police mistakes, as long as they are errors "of reasonable men, acting on facts leading sensibly to their conclusions of probability."  *U.S. v. Byrd*, 211 F.3d 1270 (6th Cir. 2000).

---

[1] *Whitley,* 401 U.S. at 568. By holding that an arresting officer is entitled to act upon a communication with other officers, this can have the effect of insulating the arresting officer from civil liability in an action for false arrest if it turns out that the fellow officers did not have probable cause to send the information.

[2] U.S. CONST. AMEND. IV

The arrest cannot stand, however, if the *communicating* officers do not have probable cause to send the communication.  *Whitley*, 401 U.S. at 586-69.

The communicating officers (Saxe, Harmon and Doe) did not have probable cause to send the fellow officers to effect the high-risk traffic stop, search, seizure, arrest and detention of Plaintiff, because they each lacked the facts required to sensibly lead them to a conclusion of probability that Plaintiff had committed any crime.

A.    Procedural History

Plaintiff agrees with the Procedural History as set forth by Defendants.

B.    Claims in Plaintiffs Second Amended Complaint

Plaintiff agrees with Defendants' recitation of the claims as set forth in Plaintiff's Second Amended Complaint (ECF No. 49) but denies that Fed. R. Civ. P. 12(b)(6) and/or 12(c) apply; therefore, dismissal thereunder is inappropriate for the reasons set forth herein.

III.    FACTUAL BACKGROUND

A.    The February 1, 2020 Complaint Regarding Firearm Brandishing

Back in February 2020, a year before the incident at hand, defendant officers Saxe and Harmon responded to a complaint of an unknown individual who had reportedly brandished a firearm at the complaining witness.  The complainant described the individual driver along with the

plate number of the vehicle allegedly involved.  Defendant officer Saxe determined that the described vehicle was registered to the owner (redacted).  Saxe also determined that "the last time the...vehicle was stopped by GRPD, it was driven by a JERMAINE WILL DAVIS."[3]  Although the car was not registered to Plaintiff, and although Plaintiff was not driving the car in question during the subject incident, Plaintiff was declared a suspect by Saxe and the "information was broadcast to KCSD as the suspect lives in their jurisdiction."[4]

The complaint was ultimately closed.  Regardless, "I [Harmon] composed an Officer Safety Flyer regarding Jermaine Davis and the listed Mercedes Benz.  **The flyer was disseminated to all sworn personnel/ECO's for officer safety purposes**."[5]  Plaintiff contends that it is Defendants' policy to review materials sent to them such as Officer Safety Fliers that they receive on the job, so it is safe to assume that the Defendants reviewed the flier, or at least that they received and were supposed to review the flier.

### B.    The March 18, 2021 Stop

Grand Rapids police officers were directed by radio dispatch to effect a high-risk traffic stop of Plaintiff based, in part, on Saxe's broadcast

---

[3] Exhibit A to Defendants' Motion
[4] *Id.*
[5] I*d.*  (emphasis added**).**

statement that "I've taken reports involving a vehicle where the driver has been known to carry a firearm or the owner at least," although *Saxe did not have that factual information*; there was one singular incident involving the vehicle where no driver was identified and no firearm was recovered - there were simply no facts that pointed to Plaintiff.  Neither Defendant Officer Saxe nor Defendant Officer Harmon had any first-hand knowledge of the driver or owner of the vehicle being known to carry a firearm.  Regardless, each officer provided false information to the arresting officers which caused them to effect the high-risk stop, which included drawn weapons, a canine search, a thorough search of the vehicle by two officers, and Plaintiff being handcuffed and detained in a police car.

Defendants' Exhibit D indicates that officers asked why they were being asked to stop the Plaintiff, and the reason stated was that Saxe indicated that "I've taken reports involving a vehicle where the driver has been known to carry a firearm or the owner at least..." along with the transmission of the false information that Plaintiff was seen in a hand-to-hand transaction.[6]

IV.    <u>STANDARD OF REVIEW</u>

Fed. R. Civ. P. 12(b)(6) provides that a complaint may be dismissed

---

[6] Exhibit D at 4:21 through 6:50

"for failure to state a claim upon which relief can be granted." At the pleadings stage, the court must assume all well-pleaded facts as true. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 674–75, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("Evaluating the sufficiency of a complaint is not a 'fact-based' question of law, [unlike denying summary judgment based on evidence sufficiency]... "). A motion for judgment on the pleadings is thus properly denied where the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."' *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano,* 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Iqbal,* 556 U.S. at 677). Because all facts are assumed as true, it follows that "there cannot be any disputed questions of fact" when deciding a motion for judgment on the pleadings. *Barnes v. Winchell*, 105 F.3d 1111, 1114 (6th Cir. 1997)

V.    LAW AND ARGUMENT

One of the three preconditions required to satisfy the lawfulness of a stop by law enforcement when that stop is made in reliance of information received by another officer is that the officer providing the information must have facts supporting the level of suspicion required."[7]  As the Supreme Court found in *Hensley*,[8]  the lawfulness of such a stop depends upon whether "the officer who issue[d] a wanted bulletin [had] a reasonable suspicion sufficient to justify [the] stop."  *Hensley* 469 U.S. 221, 231.

"[<u>A]n otherwise illegal arrest cannot be insulated from challenge by</u> <u>the decision of the instigating officer to rely on fellow officers to make the</u> <u>arrest</u>."  *Whiteley v Warden, Wy State Penitentiary*, 401 US 560, 568; 91 S Ct 1031; 28 L Ed 2d 306 (1971)(emphasis added). See also *Furlow v. Belmar*, 52 F.4th 393, 404–05 (8th Cir. 2022)(Since at least the 1970s, case law has established that a warrantless arrest prompted by a notice from one officer to another is unconstitutional *unless: (1) the arresting officer is able to make an independent finding of probable cause, see *Whiteley* ... (noting the arrest warrant lacked probable cause and the "arresting officer was not himself possessed of any factual data" to have probable cause to arrest), or (2) the arresting officer has been working closely with the officer who made

---

[7] *United States v. Lyons*, 687 F.3d 754, 767 (6th Cir. 2012)
[8] *United States v. Hensley,* 469 U.S. 221, 232–33, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985)

the initial and valid probable cause determination (encompassing both hot pursuit/fleeing suspect cases and collective knowledge doctrine cases), see, e.g., *United States v. Stratton*, 453 F.2d 36, 37 (8th Cir. 1972); *United States v. Heisman*, 503 F.2d 1284, 1286–87, 1289–90 (8th Cir. 1974).).

    If a flyer or bulletin has been issued on the basis of articulable facts *supporting* a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin *justifies* a stop to check identification, to pose questions to the person, or to detain the person briefly while attempting to obtain further information.  If the flyer has been issued *in the absence of* a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment. *Hensley*, 469 U.S. 221, 232. The only question is whether the named officers bear or share liability for the violation of Plaintiff's Fourth Amendment rights because it is unknown who (Doe) supplied the cause for the stop and how, it is unknown what information was relied upon by the officers conducting the stop, there is no evidence that there was any reasonable suspicion (let alone probable cause) to support the issuance of the flyer by Harmon, whether Saxe had reasonable suspicion to support the information broadcast by him concerning "known to carry a firearm," and whether the stop was based on the broadcast, flyer, information supplied by Doe, or something else.

    "The ultimate touchstone of the Fourth Amendment is

reasonableness." *Riley v. California*, 573 U.S. 373, 381 (2014)(cleaned up). In determining whether probable cause existed, a reviewing court is to make an objective inquiry based on the facts and circumstances of the case, and **a police officer's subjective characterization of the events is not controlling**. *People v. Nguyen*, 854 N.W.2d 223, 233 (Mich. App. 2014)(emphasis added). An officer's subjective motivations for initiating a stop are "irrelevant to the existence of probable cause," or, in this case, reasonable suspicion. *Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004). If a search incident to an arrest is *based on unreasonably inaccurate information*, the Fourth Amendment guarantee against unreasonable search and seizure has been violated.  The question of reasonableness depends upon whether the agency making the warrantless search or seizure has probable cause to believe that a crime has been committed, is in the process of being committed, or is about to be committed. *Draper v. United States*, 358 U.S. 307, 313 (1959). Probable cause is measured by the facts and circumstances within the knowledge of the arresting officer **and of which the officer had reasonably trustworthy information**. *Id.*

Here, an arrest was made by a police officer relying on either false information broadcasted and/or the knowingly false assertion by "Doe" that Plaintiff had been seen in a "hand-to-hand" transaction in order to manufacture the probable cause required to affect the surveillance, stop and

arrest of Plaintiff, specifically, "I saw a hand-to-hand transaction with Jermaine. I requested nearby units to conduct a traffic stop after my observations based on probable cause."

### A.    §1983 and Qualified Immunity

"[W]here one officer's claim to qualified immunity from the consequences of a constitutional violation rests on his asserted good faith reliance on the report of other officers," qualified immunity is determined based on "what information was clear or should have been clear to the individual officer at the time of the incident" and "what information that officer was reasonably entitled to rely on in deciding how to act, based on an objective reading of the information." *Brown v Lewis*, 779 F.2.d 401, 413 (2015)(quoting *Humphrey v. Mabry*, 482 F.3d 840, 848 (6th Cir. 2007)). Without discovery, this assessment cannot be made.

An individual defendant is not entitled to qualified immunity at the pleadings stage unless "(1) 'the facts alleged make out a violation of a constitutional right' and (2) that right 'was clearly established when the event occurred so that a reasonable official would have known that his conduct violated it."' *Myers v. City of Centerville,* 41 F.4th 746 (6th Cir. 2022) citing *Crawford v Tilley*, 15 F.4th 752, 762-62 (6th Cir. 2021).  It is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity.  *Buddenberg v Weisdack*, 939

F.3d 732, 738-39 (6th Cir. 2003).

Plaintiff sufficiently pled that the conduct of each named defendant violated his clearly established rights,[9] alleging the following as to each named defendant:

### 1.    Officer Shawn Harmon

Prior to the incident complained of, Defendant Harmon composed and disseminated to all sworn personnel an "Officer Safety Flyer"[10] regarding the road-rage/brandishing firearm incident and naming Plaintiff as "been linked to the plate currently on the Mercedes Benz as well as to the registered owner of the vehicle."  It was not reasonable for Defendant Harmon to assign the identity of Plaintiff as a suspect in a closed investigation nor to issue an "officer safety" bulletin with Plaintiff's photo on it where there is *no evidence* that Plaintiff was involved in the road-rage/brandishing firearm incident.  This knowing dissemination of false information was the basis for the "high-risk" stop and detention in derogation of Plaintiff's Fourth Amendment rights to be free from unlawful arrest.

### 2.    Officer Evan Saxe

On the date of the incident complained of, Defendant Saxe falsely announced over radio airwaves to fellow officers the unsubstantiated claim

---

[9] EF No. 48 PageID 194 at Paragraph 74.
[10] Exhibit B to Defendants' Motion

that Plaintiff was a "DRIVER KNOWN TO CARRY A FIREARM" which led to the unlawful "high-risk" stop and detention in derogation of Plaintiff's Fourth Amendment rights to be free from unlawful arrest.

### 3.    Officer Doe

Defendant Doe made the false statement that Plaintiff had been witnessed engaging in some vague "hand-to-hand" transaction. Defendants are reluctant to identify the Doe defendant, indicating it is a vice person who requires identity concealment.  No camera or video or audio has been presented to support this contention, which Plaintiff consistently denies in this litigation.

### B.    Civil Conspiracy.

There is no civil conspiracy claim in Plaintiff's Second Amended Complaint.

### C.    False Arrest/ Imprisonment and State-law Immunity

The Defendants may only be insulated from liability if it can be established that they acted without malice.  Plaintiff specifically pled malice along with facts to establish ill intent and/or capricious action.[11]

> 65.  The actions of Officer Saxe in announcing over the radio an unsubstantiated claim that the driver or owner of the 2012 Mercedes is known to carry firearms and that he had taken CCW complaints against Plaintiff without evidence of the veracity of such claims amounts to the conscious or reckless disregard of the consequences of his acts or omissions, amounting to gross

---

[11] Plaintiff's Second Amended Complaint ECF No. 49 at PageID 192 Paragraph 62, 63

negligence in avoidance of governmental immunity.

66. The actions of Officer Harmon in disseminating an officer safety flyer without any evidence to support the same likewise amounts to the conscious or reckless disregard of the consequences of his acts or omissions, amounting to gross negligence in avoidance of governmental immunity.

67. The actions of unknown officer Doe in providing a vague statement of witnessing a "hand-to-hand transaction" likewise amounts to the conscious or reckless disregard of the consequences of his acts or omissions, amounting to gross negligence in avoidance of governmental immunity.

68. Defendants Saxe, Harmon and Doe fabricated evidence to create probable cause against Plaintiff in violation of his Fourth Amendment rights.

## D.    Official Capacity Claim as to Chief Payne

Plaintiff hereby dismisses the "Official Capacity" claims as duplicative of the claims against the City at this time.

## E.    Municipal Liability Claim

To state a municipal liability claim, a plaintiff must "identify the policy, connect the policy to the municipality itself and show that the particular injury was incurred because of the execution of that policy. " *Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir. 1994). As the U.S. Supreme Court has pointed out:

> ... it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was

taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. *Bd. of Comm'rs v. Brown,* 520 U.S. 397,404,117 S. Ct. 1382, 1388, 13 7 L. Ed. 2d 626 (1997) ( emphasis in original)

### 1.    *Monell* Claim

The Sixth Circuit has stated that "a § 1983 plaintiff suing a governmental defendant must allege and prove the existence of a policy or custom of violating individuals' rights." *Foster v. Walsh*, 864 F.2d 416, 419 (6th Cir. 1988) (finding that the "failure to plead the existence of such a policy or custom … makes the complaint fatally defective."); *see also Fluellen v. U.S. Dep't of Justice Drug Enforcement Admin.*, 816 F. Supp. 1206, 1215 (E.D. Mich. 1993) ("A complete failure to plead a policy or custom would result in dismissal."); *Laise v. City of Utica*, 970 F. Supp. 605, 608 (E.D. Mich. 1997) (dismissing a claim where "plaintiffs [had] not pled the existence of an unconstitutional practice, custom or policy.").

The Plaintiff has pled the existence of an unconstitutional practice of the City which was carried out by the individual defendants.  As set forth in Plaintiff's Amended Complaint,[12] despite the City's knowledge of its exercise of customs, policies and practices that are highly likely if not probable to cause violations of the constitutional rights of plaintiff and other individuals

---

[12] Citing to specific cases of similar complaints demonstrating a *de facto* policy

subject to surveillance and detention without cause, the City was not evaluated by an independent expert prior to Plaintiff's encounter with Defendants, nor were meaningful steps taken to correct any racial profiling practices by the City's personnel. There is no plan to obtain expert assistance or to seek review of the City's policies and practices to determine whether officers are engaged in racial profiling; and if so, the remedial measures that will be required to eliminate that practice. This is of special importance because of policies and practices of the City that are likely to motivate officers to continue to engage in racial profiling, including its performance evaluation procedures, which incentivizes unlawful or arbitrary vehicle stops of people who may be (or be perceived as) less likely to complain, have fewer resources to contest, and/or who may be less likely to be believed or taken seriously in order for officers to remedy their stop records or meet performance expectations.

**F.    Due Process Violation**

Plaintiff has alleged that he was deprived of a fundamental constitutional right by persons acting under state law. *Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994).  Plaintiff has attributed factual allegations as to each defendant, constituting an affirmative act by the state that created and increased the risk to Plaintiff in essentially adjudicating him as a "criminal" through their dissemination of the falsity that Plaintiff had been the subject

of numerous reports of CCW. This state action created a special danger to the plaintiff as distinguished from a risk affecting the public at large, and in fact, this danger (unlawful stop/arrest under 4th Am.) actually came to pass. Plaintiff has sufficiently alleged that the defendants, acting under state law, deprived him of the right to bodily integrity and right against unwarranted searches and seizures as secured by the constitution and federal law.

### G.    Violation of the Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment directs that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1. The Sixth Circuit has held that the "Equal Protection Clause prevents states from making distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis." *Johnson v. Bredesen,* 624 F.3d 742, 746 (6th Cir. 2010) (citing *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 312 (6th Cir. 2005)). Here, Plaintiff has sufficiently alleged that he was treated differently than others who were similarly-situated, as the result of Defendant City's failure to end its practice of racial profiling.[13] Plaintiff has alleged that the actions taken were done so with the requisite discriminatory

---

[13] ECF No. 49, PageID 6, Paragraph 22, PageID  193, Paragraph 69

intent to treat individuals of a suspect class differently without any rational basis. *Johnson, supra.* Therefore, the Defendants should not be dismissed from any claim brought pursuant to the Equal Protection Clause.

### H.    Elliott-Larsen Civil Rights Act (ELCRA)

Defendants understandably leave argumentation regarding Elliott-Larsen Civil Rights Act (ELCRA) for the end of their brief, as there cannot be any actual controversy as to whether Plaintiff has pled the ELCRA claims adequately in Plaintiff's 20-page operative Complaint. (ECF 49).

Importantly, Plaintiff pled as follows:

Plaintiff was subjected to excessive force, harassment, profiling, false arrest, and false imprisonment based upon his race, color and national origin as defined under the Michigan Civil Rights Act, to the point where said actions and conduct substantially interfered with Plaintiff's public accommodations and public services, thereby creating an intimidating, hostile, and/or offensive public accommodations and public services environment, in direct violation of the Michigan Civil Rights Act.[14]

Plaintiff's Second Amended Complaint (ECF 49) very consistently claims that he was discriminated against for his race, which is a protected class.

Paragraph three (3) of the Second Amended Complaint clearly indicates "**Plaintiff was also treated unequally because of his race**, in

---

[14] PgID 198

16

violation of the Equal Protection Clause, the Fourteenth Amendment and the Elliott-Larsen Civil Rights Act."[15]

Notably, Plaintiff's Count IV incorporates all preceding paragraphs, thereby incorporating the entirety of the 20-page operative complaint.  More than "threadbare and conclusory assertions"[16] are made throughout the pleading.

## VI.  CONCLUSION

It is rather difficult, if not impossible, to win an entire case in response to a summary judgment brief. This is precisely why a court is exhorted not to serve as fact-finder under the guise of summary judgment. *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 120 S. Ct. 2097, 147 LEd.2d 105 (2000) (directed verdict motions, liked summary judgment, "the court should review all the evidence in the record…[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence…and must disregard all evidence favorable to the moving party that the jury is not required to believe.") (*Id.*, Emphasis added).  Here, Plaintiff has properly pled his claims

---

[15] PgID 182. See also PgID 196-97 (Where the term "African American" is used five (5) times in Plaintiff's Second Amended Complaint).
[16] Defendants' Brief, pg 20

sufficiently to place Defendants on notice and to survive the scrutiny of Fed.

Rule Civ. P. 12(b).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court

deny Defendants' motion in its entirety.

Respectfully submitted,

THE MICHIGAN LAW FIRM, PC

By: /s/ RACINE MILLER (P72612)
*Attorneys for Plaintiff*
135 N. Old Woodward Ave Ste 270
Birmingham, MI 48009
P: 844.464.3476 F: 248.237.3690
racine@themichiganlawfirm.com

Dated:  March 25, 2024